**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 1 3 2015

JAMES W. McCORMACK CLERK
By: _____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION, LITTLE ROCK**

| | |
|---|---|
| PAUL DAVIDSON,<br><br>     Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Cause No.: 4:15cv702-BRW

**TRIAL BY JURY REQUESTED**

This case assigned to District Judge Wilson
and to Magistrate Judge Kearney

**Serve:** The Corporation Company
124 W. Capitol Ave., Ste. 1900
Little Rock, AR 72201

## COMPLAINT

Plaintiff Paul Davidson, by and through counsel, Schlichter, Bogard & Denton LLP,

states as follows for his Complaint against Defendant Union Pacific Railroad Company:

### Parties, Jurisdiction & Venue

1.　　Plaintiff is a resident of Pine Bluff, Arkansas and was employed by Defendant as

a conductor/switchman in furtherance of Defendant's interstate transportation and commerce at

all relevant times pertinent to this action.

2.　　Defendant is a corporation organized and existing under the law and is authorized

to, and does, operate a business by railroad in several states, including the State of Arkansas, and

is engaged in interstate transportation and commerce.

3.　　This Court has federal subject matter jurisdiction over this action pursuant to 28

U.S.C. §1331 because Count I arises under the Federal Employers' Liability Act ("FELA"), 45

U.S.C. §1331, and Count II is authorized to be filed in this Court by the Federal Rail Safety Act

("FRSA"), 49 U.S.C. §20109(d)(3), 29 C.F.R. §1982.114(a).

4.      Venue is proper in this division and district pursuant to 28 U.S.C. §1391(b)(2) and

45 U.S.C.A. §56 because a substantial part of the events or omissions giving rise to the claim

occurred in this division and district.

## COUNT I – FEDERAL EMPLOYERS' LIABILITY ACT

5.      Plaintiff adopts and incorporates by reference paragraphs 1 through 4 above as

though fully set forth herein.

6.      On or about January 15, 2013, Plaintiff was employed by Defendant and working

in the normal course of his job duties at the Pine Bluff, AR Yard.

7.      At approximately 3:30 p.m. on that day, Plaintiff was assigned to walk in between

tracks 30 and 40 as part of his normal job duties and the ground was covered with ice.

8.      As he was walking in between the tracks, Plaintiff fell due to the icy conditions,

causing him to sustain injuries to his left knee.

9.      Plaintiff's injuries were caused, in whole or in part, by one or more of the

following acts of negligence of Defendant acting through its agents, servants, or employees,

singularly or in combination:

> (a)    Defendant failed to provide Plaintiff with a reasonably safe place to work
>        or reasonably safe conditions for work;
>
> (b)    Defendant failed to provide reasonably safe walking areas;
>
> (c)    Defendant failed to inspect and maintain its walking areas;
>
> (d)    Defendant failed to warn Plaintiff of the unsafe walking areas;
>
> (e)    Defendant failed to clear its walking areas of ice;
>
> (f)    Defendant negligently assigned and instructed Plaintiff to work in walking
>        areas covered with ice.

10.     As a result, in whole or in part, of one or more of the foregoing violations and acts or omissions of negligence on the part of Defendant, Plaintiff suffered injuries to his left knee; he has sustained injuries to the soft tissues, ligaments, tendons, muscles, blood vessels of his left leg; he has been caused to undergo severe pain and suffering; he has sought and received medical care and attention and will continue to receive medical care and attention; he has suffered psychological and emotional injury, mental anguish and anxiety and will continue to suffer psychological and emotional injury, mental anguish and anxiety in the future; he has incurred medical expenses and will continue to incur medical expenses; he has lost wages, benefits and earning capacity and will continue to lose wages, benefits and earning capacity; all to his damage.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of his Complaint, in an amount which is fair and reasonable in excess of $75,000, plus costs of suit.

## COUNT II – FRSA

11.     Plaintiff adopts and incorporates by reference paragraphs 1 through 10 above as though fully set forth herein.

12.     Defendant is a railroad carrier engaged in interstate commerce within the meaning of 49 U.S.C. §§20102 and 20109(a) and (b) of the FRSA

## Employee Protections and Remedies under FRSA-49 U.S.C. §20109

13.     In relevant part, 49 USCS §20109(a)(4) provides that "A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been

3

done or about to be done…to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee."

14.     In relevant part, 49 USCS §20109(b)(1)(A) states that "A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for…reporting, in good faith, a hazardous safety or security condition."

15.     In relevant part, 49 USCS §20109(c)(1) and (2) state that "A railroad carrier or person covered under this section may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment… A railroad carrier or person covered under this section may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician…"

16.     Pursuant to 49 USCS §20109(e), an employee prevailing in any action under §20109 "shall be entitled to all relief necessary to make the employee whole," including:

(a)     reinstatement with the same seniority status that the employee would have had, but for the discrimination;

(b)     any back pay, with interest; and

(c)     compensatory damages, including compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

17.     Also pursuant to 49 USCS §20109(e), relief in any action under 49 USCS §20109(e) may include punitive damages in an amount not to exceed $ 250,000.

## Facts

18.     On January 15, 2013, Plaintiff was employed by Defendant and working in the normal course of his job duties at the yard in Pine Bluff, AR, when he sustained injuries to his knee as a result of the unsafe working conditions.

19.     Plaintiff reported his injury to Defendant, including a written report of injury.

20.     As a result of his injuries, Plaintiff was examined by his family doctor on January 18, 2013 when his knee pain continued and he was initially diagnosed with a sprained left knee.

21.     After returning to work, Plaintiff's knee pain persisted and the knee was x-rayed on April 23, 2013.

22.     Over the next few months, Plaintiff's knee pain persisted and he underwent an MRI on July 3, 2013, which showed a serious physical injury.

23.     During this time of medical treatment, Plaintiff provided Defendant with updated medical information and Defendant granted him a medical leave of absence from June 25 to August 13, 2013.

24.     During his leave of absence, Plaintiff provided all necessary medical documentation to Defendant regarding his current medical condition, diagnoses, treatment plan, and medical restrictions.

25.     On July 12, 2013, Plaintiff received a notice of discipline charges for absences from work during the time he was undergoing physical therapy even though Plaintiff had been providing the required information to Defendant.

26.     Defendant held a discipline hearing and improperly assessed Plaintiff with discipline as a first offense, although Plaintiff presented medical justification for being off work.

5

27.     Plaintiff underwent knee surgery on September 19, 2013 to address the damage caused by the on-duty injury.

28      Plaintiff was kept off work by his doctor after the surgery for which Defendant approved a medical leave of absence. During this time, Plaintiff updated Defendant on his medical status on a regular basis.

29.     Plaintiff was ultimately released to return to work on February 3, 2014.

30.     On February 28, 2014, Plaintiff received another notice of discipline charges for alleged improper absences, most of which were during the time while he was off on approved medical leave of absence.

31.     A discipline hearing was held on March 26, 2014 and, despite having the necessary doctor's notes excusing his absences, Plaintiff was again disciplined improperly with a "second offense."

32.     During the next several months Plaintiff missed time from work for personal reasons related to a new home purchase and properly provided prompt, advance notice to Defendant of such.

21.     On August 20, 2014, Plaintiff received a notice of disciplinary charges and a discipline hearing was held on September 2, 2014 related to his absences from work during the time he was purchasing his home.

22.     Plaintiff was ultimately punished with a "third offense" and, as a result, was terminated on September 12, 2014. Under Defendant's rules, an employee's third attendance related punishment results in termination and Plaintiff was terminated on September 12, 2014.

23.     Had Defendant not improperly punished Plaintiff with the first two offenses related to his on-duty injury and medical treatment he would not have been terminated as a result of the third alleged offense.

24.     But for the first two improper punishments, the adverse action of termination on September 12, 2014 never would have occurred.

25.     Plaintiff's protected activity in reporting his on-duty injury and seeking medical treatment was a contributing factor in Defendant's dismissal of him.

26.     On March 6, 2015, pursuant to §20109 of the FRSA and the U.S. Department of Labor's implementing regulations set forth at 29 C.F.R. Part 1982, Plaintiff filed a Complaint with the Regional Administrator of Occupational Safety & Health Administration ("OSHA").

27.     The Secretary of Labor had not issued a final decision within 210 days following the filing of Plaintiff's Complaint.

28.     On October 29, 2015, pursuant to the FRSA, 49 U.S.C. §20109(d)(3), and 29 CFR §1982.11, Plaintiff notified OSHA of his intent to file this lawsuit in this Court.

### Violation of § 20109

29.     Plaintiff engaged in protected activity under the FRSA in that he reported his work-related injuries to Defendant in good faith and sought medical treatment due to his injuries.

30.     Defendant has a motive to keep personal injuries to a minimum.  As a common carrier under the FELA, Defendant is subject to liability in damages for negligently injuring Plaintiff.

31.     Defendant must report on-duty injuries to the Federal Railway Administration (FRA), and it faces penalties and fines for reporting these injuries. As a result, Defendant has a desire to prevent and discourage its employees from reporting injuries.

32.     Defendant's adverse action and dismissal of Plaintiff was taken in response to Plaintiff's report of injury and his necessary medical treatment due to his injuries.

33.     Defendant's adverse action and dismissal of Plaintiff was done in an effort to quash Plaintiff's report of an on-duty injury and to discourage similar reports of on-duty injuries in the future.

34.     Plaintiff's protected activity in reporting his on-duty injuries, seeking medical treatment, and following his doctors' orders, were clearly contributing factors in his dismissal.

35.     Plaintiff was required to follow his doctors' orders in connection with his on-duty injuries and these restrictions were the same ones Defendant accepted in approving Plaintiff's medical leave of absence.

36.     Defendant's alleged reason for the dismissal is a blatant violation of 49 U.S.C. §20109(c) since Plaintiff's protected activity in seeking medical treatment and following his doctors' orders following an on-duty injury, was clearly a contributing factor in his dismissal.

37.     The actions of Defendant in firing Plaintiff following his report of an on-duty injury and seeking medical treatment related to the same are precisely the kind of actions which the FRSA was designed to prevenUnion Pact. Congress recognized the history of major railroads retaliating with discipline against employees who report on-duty injuries and the importance of preventing such retaliation in order to promote railroad safety.

38.     The discrimination by Defendant's management and officials in response to Plaintiff's report of personal injury and unsafe conditions engenders a culture of fear and apprehension among employees in reporting incidents of personal injury to their employer and other authorities. Specifically, employees will be deterred from reporting injuries and unsafe

8

conditions, as well as seeking medical treatment, as a result of the culture of fear and apprehension created by its actions against employees who do report injuries.

39.     Defendant would not have taken the same adverse action against Plaintiff absent his protected activity in reporting his on-duty injury and seeking medical treatment due to his injuries.

40.     Defendant should be punished to remedy its willful violation of 49 U.S.C. §20109, to punish the corporation for its adverse action toward Plaintiff, creating and perpetuating fear among employees regarding reporting injuries and safety hazards, and to deter railroad management from continuing its practice of retaliating against and disciplining its employees for reporting on-the-job injuries and seeking medical treatment.

41.     Defendant violated 49 U.S.C. §20109 in discriminating against, reprimanding, and terminating Plaintiff due, in whole or in part, to his report of on-duty injury and unsafe working conditions, as well as seeking medical treatment and following his doctor's orders due to his on-duty injuries.

42.     As a result of Defendant's violation of 49 U.S.C. §20109,  Plaintiff has suffered severe damages and economic losses, including interest on those losses; he has lost wages, benefits, and earning capacity, and will continue to lose wages, benefits, and earning capacity in the future; he has suffered great pain of the mind and body and will continue to suffer great pain of mind and body permanently; he has incurred medical expenses and will continue to incur medical expenses in the future; he has suffered mental anguish and emotional distress and will continue to suffer mental anguish and emotional distress in the future; he continues to incur special damages associated with litigation, including attorney's fees, costs and expert witness fees; all to his damage.

43.    Defendant's adverse action and dismissal of Plaintiff was done with reckless and wanton disregard for the law and safety of others and with complete indifference to Plaintiff's rights under the FRSA, warranting punitive damages pursuant to 49 U.S.C. §20109(e).

WHEREFORE, based on Defendant's violations of the FRSA, Plaintiff prays for a Judgment under the FRSA for all relief available pursuant to 49 U.S.C. §20109, including compensatory damages, special damages, punitive damages, litigation costs and attorney fees, and all other relief necessary to make Plaintiff whole.

SCHLICHTER, BOGARD & DENTON

NELSON G. WOLFF Fed #37998; AR #2006002
JASON P. KELLY MO #53896
100 South Fourth Street
St. Louis, Missouri 63102
(314) 621-6115
(314) 621-7151 (fax)
nwolff@uselaws.com
jkelly@uselaws.com

COUNSEL FOR PLAINTIFF